IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RODELYNE AUGUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:24-cv-2363 (PTG/WEF) |
| ) | |
| HON. DAVID OBLON, in his official capacity, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM ORDER

This matter comes before the Court on the Motion for Sanctions filed by Defendants Maureen Pilar Falo, Erin Margaret Bayles, and their law firm, Salvado, Salvado & Salvado, P.C., d/b/a Salvado Law (collectively, "Attorney Defendants"). Dkt. 32. Plaintiff Rodelyn Augustin, proceeding *pro se*, sued Attorney Defendants and Defendant Judge David A. Oblon ("Judge Oblon") under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses. Dkt. 1; Dkt. 18 ("Am. Compl."). Plaintiff's claims arose out of events that occurred in state child custody proceedings between Plaintiff and her child's father, Christopher Woodhall, represented by Attorney Defendants. Dkt. 14-2 at 12-14.

On June 11, 2025, while three motions to dismiss (Dkts. 21, 25, 26) and the present Motion for Sanctions (Dkt. 32) were pending before this Court, Plaintiff filed a Notice of Voluntary Dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. 44. While the Notice dismissed the action and rendered moot the pending motions to dismiss, it did not impact the Court's authority to consider the Motion for Sanctions under Federal Rule of Civil Procedure 11. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("[D]istrict courts may enforce

Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)."). Accordingly, the Court heard argument on the Motion for Sanctions on June 12, 2025. Dkt. 45. For the reasons set forth below, the Court now grants Attorney Defendants' Motion for Sanctions.

## Background

The relevant facts for this Motion for Sanctions stem from a series of proceedings in state court concerning Plaintiff's child custody. On August 24, 2022, the Fairfax County Juvenile and Domestic Relations District Court ("JDR Court") entered a final child custody order with respect to the child of Plaintiff and Christopher Woodhall ("Mr. Woodhall").[1] Dkt. 14-2 at 12-14 (Ex. A). On September 2, 2022, Plaintiff appealed the JDR Court's decision to the Circuit Court of Fairfax County in Virginia. *Id.* at 15 (Ex. B). On March 24, 2023, Plaintiff decided to "nonsuit" her appeal before the Fairfax County Circuit Court under Va. Code § 8.01-380, which permits parties to voluntarily withdraw their case without prejudice. *Id.* at 16 (Ex. C). The Circuit Court granted her request and dismissed the suit without remanding it. *Id.*; Dkt. 22 at 2.

In April 2023, Mr. Woodhall, represented by Attorney Defendants, sought an injunction in JDR Court against Plaintiff "to prevent her from removing their child from a school in Virginia and placing him in a Maryland school." Dkt. 22 at 2 (citing Dkt. 14-2 at 19-21 (Ex. D)). The JDR Court dismissed the motion on the grounds that the Circuit Court had not remanded the matter back to JDR Court. Dkt. 14-2 at 19-21 (Ex. D). Mr. Woodhall, through Attorney Defendants, subsequently moved to enjoin Plaintiff in the Fairfax County Circuit Court. *Id.* at 22 (Ex. E). At that time, Plaintiff's then-counsel moved the Circuit Court to remand the matter back to the JDR

---

[1] The custody order granted joint legal custody to both parents, requiring them to "jointly confer on all major decisions affecting [the child's] life . . . and make joint decisions regarding any issue that impacts the welfare of [the child] including, but not limited to, schooling issues, and non-routine medication and medical care." Dkt. 14-2 at 12.

2

Court. *Id.* Circuit Court Judge Oblon found that the JDR Court had jurisdiction over Mr. Woodhall's injunction motion and consequently granted Plaintiff's motion to remand ("Remand Order"). *Id.* at 25 (Ex. E). Back before the JDR Court, Mr. Woodhall once again moved to enjoin Plaintiff from removing their child from his Virginia school. *Id.* at 26-27 (Ex. F). However, the JDR Court denied the motion given the lack of a pending petition before it and because 21 days had passed since the final August 2022 custody order.[2] *Id.*

On May 31, 2023—based on a new petition from Mr. Woodhall—the JDR Court issued Plaintiff a show-cause summons for her failure to comply with several provisions of the August 2022 final custody order. *Id.* at 28 (Ex. G). Mr. Woodhall, through Attorney Defendants, also sought sanctions against Plaintiff. *Id.* at 29-30. The JDR Court granted Mr. Woodhall's motion for sanctions and ordered Plaintiff to pay $5,025.60 in attorney's fees and $5,661.50 as disposition for being held in civil contempt. *Id.* at 32 (Ex. G). The court also ordered Plaintiff's attorney to pay $1,500 in attorney's fees. *Id.* Plaintiff's attorney withdrew from the matter prior to the JDR Court's order on sanctions and, thereafter, Plaintiff was proceeding *pro se*. *Id.*

Plaintiff subsequently filed a series of lawsuits against Attorney Defendants and Judge Oblon in the state courts. Specifically, on September 30, 2024, Plaintiff sued Attorney Defendants in Fairfax County Circuit Court for "abuse of process and malicious prosecution." Dkt. 22-1.[3] On August 5, 2024, Plaintiff filed suit against Attorney Defendants, their colleagues, and Mr. Woodhall in the same court seeking to "vacate void judgements [sic] entered against Plaintiff."

---

[2] Under Rule 1:1(a) of the Rules of Supreme Court of Virginia, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

[3] The Court may take judicial notice of these proceedings because the court filings are "matter[s] of public record and not subject to reasonable dispute." *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 831 n.2 (E.D. Va. 2022).

Dkt. 22-2 (Ex. B) ¶ 2. On both actions, the Circuit Court sustained demurrers and dismissed the complaints with prejudice on January 21, 2025. Dkt. 22-3 (Ex. C).

Plaintiff also filed a petition for a writ of mandamus and prohibition against Judge Oblon in the Supreme Court of Virginia on June 11, 2024. *See* Ex. 14-2 at 36 (Ex. H). The petition challenged Judge Oblon's judicial authority to issue a remand order and sought to void his order and any subsequent orders in connection with it. *Id.* On December 6, 2024, the Supreme Court of Virginia issued an order denying the petition and concluding that Judge Oblon had authority to issue the remand order under Virginia law. *Id.* ("By not remanding its acquired jurisdiction to the JDR court upon rendition of its judgment, the circuit court retained jurisdiction over the matter.").

**Procedural History in Present Proceedings**

On December 27, 2024—while her Circuit Court cases were still pending—Plaintiff filed the Complaint in this Court against Attorney Defendants and Judge Oblon. She brings an action under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses and seeking injunctive relief under Federal Rule of Civil Procedure 60(b)(4). Dkt. 1; *see also* Fed. R. Civ. P. 60(b)(4) ("[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding [when]... the judgment is void.").

On January 17, 2025, Attorney Defendants moved to dismiss the Complaint. Dkt. 3. That same day, Attorney Defendants sent Plaintiff a letter advising that her Complaint violated Rule 11. Dkt. 33 at 1; *see also* Dkt. 33-1 (Ex. A). In particular, it provided:

> In light of the two dismissals in the circuit court cases this week and having reviewed the Complaint . . . I am writing to request that you voluntarily dismiss the Complaint on the grounds that the claims asserted within violate Rule 11 (b) . . . . Specifically, the claims are not warranted by existing law, are not grounded in fact, and under the circumstances appear to have been filed for an improper purpose.

Dkt. 33-1 (Ex. A). The letter attached copies of the Motion to Dismiss and yet-to-be-filed Motion

4

for Sanctions. *Id.* With respect to the Motion for Sanctions, it further stated:

> The motion has not yet been filed pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure to allow you the opportunity to voluntarily dismiss the Complaint. We will not pursue the Motion for Sanctions if the Complaint is voluntarily dismissed within twenty-one (21) days of January 17, 2025. However, if the Complaint is not voluntarily dismissed within twenty-one (21) days, in addition to moving forward with our Motion to Dismiss, we intend to file and move forward separately with the Motion for Sanctions.

*Id.*

On January 21, 2025, Plaintiff filed an Amended Complaint. Dkt. 18. The Amended Complaint omits the original Rule 60(b)(4) claim and instead alleges Attorney Defendants and Judge Oblon violated Plaintiff's constitutional rights by filing "jurisdictionally defective filings and enforcement of defective orders" through "coordinated actions." *Id.* at 10. Specifically, Plaintiff alleges Judge Oblon did not have jurisdiction to modify a nonsuit appeal order and issue a remand order for a motion to enjoin. *Id.* at 2. She also alleges the Attorney Defendants "engaged in improper filings and actions that facilitated constitutionally invalid judgments, procedural defects, and constitutional violations." *Id.* at 6-7. The Amended Complaint seeks a declaratory judgment on the unconstitutionality of all Defendants' actions; injunctive relief to prohibit all Defendants "from enforcing procedurally and jurisdictionally defective rulings"; and both compensatory and punitive damages as well as attorney's fees and other expenses. *Id.* at 38-39 (Prayer for Relief).

On February 4, 2025, Attorney Defendants filed a Motion to Dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim. Dkt. 21. On February 7, 2025, Judge Oblon filed two Motions to Dismiss: one for lack of jurisdiction and one for failure to state a claim. Dkts. 25-26. On March 11, 2025, Attorney Defendants filed a Motion for Sanctions against Plaintiff under Federal Rule of Civil Procedure 11 for vexatious litigation. Dkt. 32; Dkt.

5

33 at 2. Plaintiff filed extensive oppositions to the Motions to Dismiss and the Motion for Sanctions. Dkts. 30, 36. Attorney Defendants noticed their motions to be heard on April 17, 2025, which was then reset to June 12, 2025. Dkts. 35, 39. On June 11, 2025—the day before the hearing—Plaintiff filed a Notice of Voluntary Dismissal under Rule 41(a)(1)(A)(i). Dkt. 44. The parties still appeared for argument. At the hearing, the Court advised Plaintiff that it would be taking up the Motion for Sanctions notwithstanding dismissal and heard argument. Following the hearing, Plaintiff also filed a Motion to Vacate Void Reopening and Any-Sanctions-Related Proceedings Under Rule 60(B)(4). Dkt. 50.

## Legal Standard

Federal Rule of Civil Procedure 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). To comply with Rule 11, a *pro se* party must conduct a "prefiling investigation of law and fact which is objectively reasonable under the circumstances." *Johnson v. Lyddane,* 368 F. Supp. 2d 529, 532 (E.D. Va. 2005) (quoting *Harmon v. O'Keefe,* 149 F.R.D. 114, 116 (E.D. Va. 1993)). A failure to comply with Rule 11(b) may result in sanctions, including for *pro se* litigants. *Id.*; *Abbott v. Suntrust Mortg., Inc.,* No. 3:08-cv-665, 2009 WL 971267, at *4 (E.D. Va. Apr. 8, 2009) ("Litigants proceeding *pro se* are liable for sanctions under Fed. R. Civ.

6

P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support."). The burden to establish Rule 11 sanctions falls on the moving party, and once that initial burden is met, the responding party must "prove that his conduct was reasonable." *Moseley v. Gardiner*, No. 1:20-cv-1248, 2021 WL 3629230, at *4 (E.D. Va. July 16, 2021), *report and recommendation adopted*, No. 1:20-cv-1248, 2021 WL 3618271 (E.D. Va. Aug. 16, 2021).

Should the Court find "that there was no objectively reasonable basis for the claims," the Court must impose sanctions. *Guerrero v. Weeks*, No. 1:13-cv-837, 2014 WL 793523, at *6 (E.D. Va. Feb. 26, 2014). However, the Court retains discretion to determine an appropriate sanction. *Id.*; *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987) ("[T]he determination of what [sanction] is 'appropriate' is still a matter left to the sound discretion of the district court."). Any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

## Analysis

As a preliminary matter, the Court finds that Attorney Defendants properly complied with the procedure for seeking sanctions under Rule 11. Rule 11 has a safe harbor provision that requires a party seeking sanctions to first serve a motion for sanction "describ[ing] the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Then, the motion for sanctions can be filed with the Court no sooner than 21 days after service on the party against whom the motion is made, unless "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected" within that 21-day safe-harbor period. *Id.*

7

On January 17, 2025, Attorney Defendants sent Plaintiff a letter advising that the original Complaint violated Rule 11. Dkt. 33 at 1; *see also* Dkt. 33-1 (Ex. A). The letter provided notice of the motions to dismiss and impending motion for sanctions and notified Plaintiff that she had 21 days to voluntarily dismiss the complaint before Defendants would pursue the sanctions motion. Dkt. 33-1 (Ex. A). Plaintiff, however, did not voluntarily dismiss the Complaint and, instead, four days later, filed an Amended Complaint. Dkt. 18. Attorney Defendants nevertheless waited far past the 21-day safe harbor and filed their Motion for Sanctions on March 11, 2025. Dkt. 32. Accordingly, the Court finds that Attorney Defendants conferred in good faith, as required under Rule 11.

**Applicability of Sanctions**

Next, the Court addresses whether sanctions are appropriate under Rule 11. Attorney Defendants contend that sanctions against Plaintiff are warranted for two reasons. First, Attorney Defendants argue that Plaintiff's claims are legally and factually baseless. Dkt. 33 at 5-12. Second, Attorney Defendants assert that the fact that Plaintiff's current suit is her third suit on this matter "evinces filing for improper purpose." *Id.* at 12-14 The Court agrees with both arguments.

First, Plaintiff's claims against Attorney Defendants are frivolous. Under Fourth Circuit law, legal claims that potentially violate Rule 11(b) should be evaluated using "a standard of objective reasonableness." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.d 349, 352 (4th Cir. 1998)). Here, the crux of Plaintiff's claims against Attorney Defendants rest on a legally baseless premise: that "Judge Oblon's order was void, and thus JDR proceedings afterward are also void." Dkt. 33 at 9. Numerous courts have explicitly ruled that Plaintiff's challenges to Judge Oblon's order are legally untenable. As established earlier, the Supreme Court of Virginia already denied Plaintiff's arguments on this

8

point. Dkt. 14-2 at 22-25, 36-37 (Exs. E, H). Furthermore, as Attorney Defendants made clear in their Motion to Dismiss, this Court is barred by the *Rooker-Feldman* doctrine from opining on the validity of Judge Oblon's order. Dkt. 22 at 7-8; *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (noting that federal courts lack jurisdiction "to review and reverse unfavorable state-court judgments").

Rather than voluntarily dismissing, Plaintiff instead filed an Amended Complaint requesting virtually the same relief in different terms. While the Amended Complaint removed any explicit references to Rule 60(b)(4) relief, Plaintiff fashioned new counts alleging constitutional claims against Defendants that would still require the Court to deem Judge Oblon's order void. Am. Compl. at 34 ("Defendants knowingly relied on jurisdictionally defective rulings . . . "); *id.* at 36 (requesting the Court to "[e]njoin Defendants from further reliance on jurisdictionally defective orders to deprive Plaintiff of due process and equal protection); *id.* at 38 (requesting the Court to "[p]rohibit Defendants from enforcing rulings or taking actions that perpetuate systemic procedural irregularities and constitutional violations."). The Amended Complaint also adds a "civil rights violation of 42 U.S.C. § 1983" claim, alleging that Attorney Defendants and Judge Oblon were conspiring against her (presumably when Judge Oblon granted Plaintiff's own motion to remand). *Id.* at 31-33. Plaintiff attempts to frame this suit as raising "novel or evolving constitutional claims" Dkt. 36 at 16. However, the text of the Amended Complaint and briefs clearly show that Plaintiff seeks to relitigate Judge Oblon's remand order. *See id.* at 16-17. This is not the proper domain of federal courts. The Court finds that Plaintiff's actions reveal both an absence of good faith and a lack of diligence. Her challenge to Judge Oblon's order is not legally justified.

Plaintiff's constitutional claims are legally insufficient such that a reasonable person would understand no viable claim exists under the facts as alleged. As Plaintiff acknowledges, claims under § 1983 only apply to defendants acting under the color of state law. Dkt. 30 at 4. Plaintiff cites extensive case law to argue that Attorney Defendants acted under the color of state law by "act[ing] jointly with a judge or state official to violate constitutional rights." *Id.* Specifically, she claims Attorney Defendants' conduct was "fairly attributable to the state" because they "relied on void orders to file subsequent pleadings," thus "invok[ing] state power." *Id.* at 5, 21.

The Amended Complaint, however, does not state any facts demonstrating the alleged state power underlying Attorney Defendants' actions. Plaintiff provides no evidence of concerted action between Judge Oblon and Attorney Defendants such that § 1983 would apply to Attorney Defendants. *See* Dkt. 33 at 10; Am. Compl. at 23-25. Without any evidentiary support, Plaintiff's § 1983 and constitutional claims are objectively unreasonable. *See Vuyyuru v. Jadhav*, No. 3:10-cv-173, 2011 WL 1483725, at *22 (E.D. Va. Apr. 19, 2011) (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)) ("A fact allegation lacks evidentiary support when it is 'unsupported by *any* information obtained prior to filing.'"); *Brubaker*, 943 F.2d at 1373 ("To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint.").

Furthermore, a cursory pre-filing review of applicable law would make clear that the facts here do not establish state action under any precedent. A party violates Rule 11(b) when the complaint "has 'absolutely no chance of success under the existing precedent.'" *Id.* at 1373 (quoting *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987)). Plaintiff effectively claims that Attorney Defendants violated her constitutional rights by representing their clients in filing motions and participating in legal proceedings. Am. Compl. at

24. The law is clear that attorneys do not act under the color of state law when representing their clients by, for example, filing pleadings on their behalf.

Courts, including in this District, have imposed sanctions on parties bringing similarly baseless § 1983 and conspiracy claims against private attorneys. *Moseley v. Gardiner*, No. 1:20-cv-1248, 2021 WL 3629230, at *5 (E.D. Va. July 16, 2021) (holding that a party violated Rule 11 because, among other reasons, he brought section 1983 claims against parties that were not state actors and "failed to even allege facts that could plausibly satisfy the elements of his . . . conspiracy claim"), *report and recommendation adopted*, 2021 WL 3618271 (E.D. Va. Aug. 16, 2021)); *Wolfe v. Zuckerman*, No. 1:20-cv-175, 2020 WL 5351036, at *2-4 (E.D. Va. Sept. 4, 2020) (sanctioning a party under Rule 11 for, among other things, bringing section 1983 claims against "retained attorney acting on behalf of her client" and "fail[ing] to adequately plead a claim of conspiracy"); *Webb v. Morella*, 522 Fed. App'x. 238, 240-43, 243 (5th Cir. 2013) (affirming district court's imposition of sanctions based on section 1983 claims brought against private attorney and imposing new sanctions on appeal); *Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 122, 127-129 (D. N.J. 1998) (discussing Section 1983 claim against attorney who did not act under color of state law and noting that "the baselessness of [Plaintiff's] legal theory is clear enough that it is easily dismissed and is indeed sanctionably frivolous."); *Thompson v. Aland*, 639 F. Supp. 724, 728, 731-32 (N.D. Tex. 1986) (imposing sanctions for, among other things, bringing a 1983 claim against a private attorney without factual allegations showing the attorney acted under color of law). This is not new law.

Plaintiff's myriad citations throughout her filings demonstrate her ability to conduct the pre-filing review of applicable state law. Accordingly, the Court finds that Plaintiff's actions here constitute sanctionable conduct. The Court agrees with Plaintiff that "Rule 11 is not a tool to

punish litigants for advancing contested or novel legal theories . . . ." Dkt. 36 at 12. Despite Plaintiff's best arguments, the theories set forth in the Amended Complaint are neither novel nor uncontested; the weight of precedent in other courts have made clear they have no legal basis.

Finally, the Court finds that Attorney Defendants have demonstrated that Plaintiff's filing serves an improper purpose, especially where its underlying claims have been litigated and denied multiple times. In assessing a filing for improper purpose, the litigant's conduct is viewed "under an objective standard of reasonableness rather than assessing subjective intent." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) (citing *Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina*, 789 F.2d 1056, 1060 (4th Cir. 1988)). "Circumstantial facts surrounding the filing may also be considered as evidence of the signer's purpose," including "[r]epeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made . . . ." *Id.* at 519.

Here, Plaintiff's lawsuit is one of many she has filed against Attorney Defendants in connection with their representation of Mr. Woodhall in child custody proceedings. And for the reasons stated above, the claims are indeed "outrageous" and lacking in legal or factual support. *Id.* The Court is persuaded by Attorney Defendants' assertion:

> An objective inquiry into these circumstances—bringing a duplicative, legally and factually meritless suit after its central premise was rejected by Virginia's highest court—evinces litigation for harassment's sake, as does the decision to file an Amended Complaint adding a meritless conspiracy claim after being made aware of these issues.

Dkt. 33 at 13-14.

Moreover, Plaintiff's last minute voluntary dismissal further illustrates the impropriety of her suit. Instead of voluntarily dismissing her claims within the twenty-one day period set out in Rule 11, Plaintiff waited until one day before the scheduled hearing on the motions to file her Rule

12

41(a)(1) dismissal notice. *See* Dkts. 44, 45. In the notice of dismissal and at the hearing before this Court, Plaintiff explained that she sought to "avoid duplicative litigation" with a related action she removed to this Court. Dkt. 44 at 1; *see* Dkt. 46 at 15:9-14; *see also Woodhall v. Augustin*, No. 1:25-cv-932 (E.D. Va. Jun. 2, 2025). It is not happenstance that by voluntarily dismissing this suit without prejudice, Plaintiff seeks to reserve another opportunity to sue Attorney Defendants under the same claims that have been repeatedly rejected.

Moreover, the Court furthermore notes that the remand order central to Plaintiff's claims was one that *Plaintiff's* counsel—not Attorney Defendants—requested. *See* Dkt. 30-1 (Tr.) at 6:22-7:4, 8:18-9:11; Dkt. 30-2. Thus, as Attorney Defendants aptly state, "[s]uing Defendants in spite of Ms. Augustin's knowledge that the remand order is one her own counsel sought evinces pursuit of litigation for an improper purpose . . . ." Dkt. 38 at 3.

"The purposes of Rule 11 are to compensate the victims of the violation, to punish present litigation abuse, to streamline court dockets, to facilitate court management, and to deter future litigation abuse." *Chaplin v. Du Pont Advance Fiber Sys.*, 303 F. Supp. 2d 766, 771 (E.D. Va. 2004), *aff'd*, 124 F. App'x 771 (4th Cir. 2005) (citing *In re Kunstler*, 914 F.2d at 522-23). In accordance with these stated purposes, the Court finds that Plaintiff has violated Rule 11 and sanctions are warranted here. The fact that Plaintiff voluntarily dismissed her Amended Complaint on the eve of the motions hearing is of no consequence. *See In re Kunstler*, 914 F.2d at 513 ("As the 'violation of Rule 11 is complete when the paper is filed,' a voluntary dismissal does not expunge the Rule 11 violation.") (quoting *Cooter & Gell*, 496 U.S. at 395).

**Scope of Sanctions**

Because the Court finds Plaintiff violated Rule 11(b), it will impose sanctions. *See Guerrero*, 2014 WL 793523, at *6. Under Rule 11(c), sanctions "must be limited to what suffices

13

to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The Court should impose "the least severe sanction adequate to serve the purposes of Rule 11 . . . ." *In re Kunstler*, 914 F.2d at 522. The primary purpose of Rule 11 is to deter future litigation abuse, while additional purposes "include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." *Id.* Attorney Defendants request reasonable attorney's fees incurred in connection with this case and a pre-filing injunction. Dkt. 33 at 16. Because both requests serve Rule 11's purposes, the Court will grant them.

First, monetary sanctions for attorney fees are appropriate to compensate Attorney Defendants for ongoing frivolous litigation. *See In re Kunstler*, 914 F.2d at 522 ("The amount of expense borne by opposing counsel in combatting frivolous claims may well be an appropriate factor for a district court to consider in determining whether a monetary sanction should issue and if so, in what amount."). When imposing a monetary sanction, a district court should consider "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id.* at 523. The Fourth Circuit has made clear that "'reasonable' attorney's fees in the context of Rule 11 'does not necessarily mean actual expenses and attorney's fees.'" *Id.* (quoting *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 (4th Cir. 1988)). Accordingly, the Court will require Attorney Defendants to submit fee statements to assess the reasonableness of their requested fees, especially in light of the other considerations for monetary sanctions, and additionally permit Plaintiff to "examine and contest the . . . fee statements." *Id.*

Furthermore, the Court finds a pre-filing injunction is appropriate to deter future litigation abuse. Before imposing a pre-filing injunction, the Court must provide the litigant "notice and an

opportunity to be heard." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 819 (4th Cir. 2004). As evidenced by Plaintiff's briefing and appearance at the June 12 hearing, the Court has provided such opportunities. The All Writs Act, 28 U.S.C. § 1651(a), gives federal courts the authority to limit access to courts by repetitive bad-faith litigants. *Id.* at 817. The Court recognizes that pre-filing injunctions are a remedy that should be used sparingly and should not be imposed absent "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.* at 817-18 (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). Courts should exercise even more caution when dealing with a *pro se* plaintiff. *Id.* at 818.

> When determining whether a pre-filing injunction is appropriate, a court must consider:
>
> [A]ll the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818.

All four factors weigh in favor of a pre-filing injunction here. First, the Court finds that Plaintiff has a history of filing duplicative lawsuits relitigating the validity of the state courts' orders. Plaintiff repeatedly raised the same argument: Judge Oblon's remand order set off a series of invalid court orders. The Supreme Court of Virginia rejected Plaintiff's argument, declaring that "Judge Oblon was within his authority to enter the May 10, 2023 order in this case." Dkt. 1-4 at 2. Moreover, Plaintiff sued Attorney Defendants twice in the Fairfax County Circuit Court in an effort to deem the state courts' orders void, and both cases were dismissed. Dkt. 33 at 1. The fact that this is Plaintiff's first suit in this Court does not undermine the duplicative nature of her suit. *See Studli v. Child. & Youth Servs.*, 2012 WL 5420322, at *6 (D. Md. Nov. 6, 2012), *aff'd*,

15

516 F. App'x 270 (4th Cir. 2013) (imposing a pre-filing injunction where the plaintiff "attempted to re-litigate her claims in three different courts"); *Fonseca v. Am. Red Cross*, 2022 WL 1154757, at *4 (W.D.N.C. Apr. 19, 2022), *aff'd*, 2022 WL 11751536 (4th Cir. Oct. 20, 2022) (imposing pre-filing injunctions where the plaintiff "filed multiple duplicative lawsuits against the same or similar defendants alleging similar or related allegations in both state and federal court").

Second, the Court finds that Plaintiff's claims lack merit and a good faith basis because they seek to relitigate the same state law claims in a federal forum. Plaintiff has repeatedly neglected to conduct a reasonable prefiling investigation on her claims, in violation of her Rule 11 obligation. *See Bui v. Smyth*, No. 1:23-cv-1224, 2024 WL 1076247, at *2 (E.D. Va. Mar. 12, 2024), *aff'd*, 2024 WL 3983958 (4th Cir. Aug. 29, 2024) (finding lack of good faith where litigant failed to conduct a reasonable prefiling investigation). Moreover, although Virginia courts have now twice rejected the premise of her suit—that Judge Oblon's remand order is void—she continues to bring the same claim under different names. *See* Dkt. 14-2; Dkt. 22-3; *Echeverria v. Samuel I. White, P.C.*, 2019 WL 1375587, at *5 (E.D. Va. Feb. 12, 2019) (finding lack of good faith where "[t]he Court rejected Plaintiff's claims on two prior occasions.).

Third, Plaintiff's persistent litigation against Attorney Defendants has imposed significant burdens on both them as well as on this Court. *See* Dkt. 33 at 14. In each lawsuit, Attorney Defendants have had to expend resources to prepare responsive pleadings and motions to address duplicative and baseless claims. *Id.*; *see also Echeverria*, 2019 WL 1375587, at *6 (finding a burden on defendants where they incurred significant litigation costs and were required to submit numerous filings on duplicative lawsuits). The Court further finds that "Plaintiff's filings also substantially burden the Court as they drain judicial resources by causing the Court to devote time and energy" to previously adjudicated claims. *Echeverria*, 2019 WL 1375587, at *6.

16

Finally, Plaintiff's actions demonstrate monetary sanctions alone will not deter future similar conduct. Despite being sanctioned before the JDR Court in excess of $10,000 and receiving warnings of sanctions in this case, Plaintiff has continued to litigate the same claims against Attorney Defendants. *See* Dkt. 14-2 at 32-33 (Ex. G). Furthermore, "there is no indication that [Plaintiff] will voluntarily stop" her duplicative litigation. *Bui*, 2024 WL 1076247, at *3. At the hearing on the Motion for Sanctions, Plaintiff indicated that she intended to continue litigating the same allegedly void remand order in the other case that she removed to this Court. Likewise, Plaintiff's voluntary dismissal of this case without prejudice similarly indicates an intent to keep open her avenues open for continued duplicative litigation against these Defendants.

Therefore, the Court finds a pre-filing injunction is appropriate. Furthermore, it will accept Defendants' proposal for the conditions of the pre-filing injunction, finding that it is narrowly tailored to fit the circumstances of this case as *Cromer* requires. Dkt. 33 at 15-16 (citing *Abbott v. Suntrust Mortg., Inc.*, 2009 WL 971267, at *6 (E.D. Va. Apr. 8, 2009)); *Cromer*, 390 F.3d at 819 (quoting *Brow*, 994 F.2d at 1038) (stating that pre-filing injunctions must be "narrowly tailored to fit the specific circumstances at issue."). Accordingly, the Court will impose a pre-filing injunction barring Plaintiff from filing any action or further pleading against Attorney Defendants in the Eastern District of Virginia arising out of or relating to their representation of Mr. Woodhall in child custody proceedings, without leave of the Court.

## Conclusion

For the reasons set forth in this memorandum opinion, it is hereby

**ORDERED** that Attorney Defendants' Motion for Sanctions (Dkt. 32) is **GRANTED**; it is further

**ORDERED** that Attorney Defendants' request for attorney's fees is **GRANTED**.

Attorney Defendants are directed to submit their fee statements to this Court with fourteen (14) days of this Order, upon which Plaintiff will have seven (7) days to provide a response. The Court will subsequently issue an Order to determine reasonable attorney's fees and costs; it is further

**ORDERED** that Defendant's request for a pre-filing injunction is **GRANTED**. Plaintiff is hereby **ENJOINED** from filing any further lawsuits against Defendants Maureen Pilar Falo, Erin Margaret Bayles, and their law firm, Salvado, Salvado & Salvado, P.C., d/b/a Salvado Law in the Eastern District of Virginia arising out of or relating to their representation of Mr. Woodhall in child custody proceedings, without prior leave of Court; it is further

**ORDERED** that to obtain approval, Plaintiff must file an "Application for Leave to File Suit in the United States District Court for the Eastern District of Virginia"; (2) accompanied by a copy of this Memorandum Order; and (3) a notarized affidavit or declaration certifying that the matters raised in the suit have not been raised or decided in any other lawsuit, the case is brought in good faith, and is not filed for the purpose of harassment; it is further

**ORDERED** that the Clerk is **DIRECTED** that any new filing should not be docketed until pre-filing approval is granted by the Court; and it is further

**ORDERED** that Plaintiff's Motion to Vacate Void Reopening and Any Sanctions-Related Proceedings Under Rule 60(b)(4) (Dkt. 50) is **DENIED**.

The Clerk is directed to forward copies of this Memorandum Order to all counsel of record and to the *pro se* Plaintiff at the address provided.

Entered this 11 day of March, 2026.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge